IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

LAWRENCE ALEXANDER JR., ELLIS          )
ALLEN, MITCHELL ALSTON, FRANCES R.     )
BANKS, AHMED BLAKE, MICHAEL O.         )
BRODIE, KEVIN E. CHANDLER,             )
CHARLES E. CHERRY, ERNEST              )
CUTHBERTSON, DARRIN DAVIS,             )
STEVEN A. EVANS, WILLIAM GRAVES,       )
MILFORD J. HARRIS II, JONATHAN         )
HEARD, ANTUAN HINSON, STEPHEN L.       )
HUNTER, BRIAN JAMES, DEMETRIUS         )
W. JOHNSON, JOHN O. LEGRANDE,          )
GEORGE M. LITTLE, DARRELL              )
MCDONALD, C.L. MELVIN, STACY A.        )
MORTON JR., WILLIE PARKER, LARRY       )
PATTERSON JR., WILLIAM A. PHIFER,      )
JOSEPH PRYOR, NORMAN RANKIN,           )
WAYNE REDFERN, ALEXANDER RICKETTS,     )
RONALD ROGERS, STEVEN SNIPES,          )
CALVIN STEVENS JR., ERIC STEVENSON     )
JERMEIR JACKSON-STROUD, JULIUS         )
TUNSTALL, ALLEN WALLACE, FRANK         )
YOUNG and MICHAEL WAYLAND WALL,        )
                                       )
                Plaintiffs,            )
                                       )
v.                                     )          1:09-CV-293
                                       )
THE CITY OF GREENSBORO, DAVID          )
WRAY, Former Police Chief of the       )
City of Greensboro, in his             )
individual and official               )
capacities, RANDALL BRADY, Former      )
Deputy Police Chief of the City        )
of Greensboro, in his individual       )
and official capacities, TRUDY         )
WADE, Member of City Council of        )
the City of Greensboro, in her         )
individual and official               )
capacities, and SCOTT SANDERS,         )
in his individual and official         )
capacities.                            )
                                       )
                Defendants.            )

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

This matter is before the court on various motions for judgment on the pleadings filed by Defendants The City of Greensboro ("the City") (Doc. 62), David Wray ("Wray") (Doc. 64), and Randall Brady ("Brady") and Scott Sanders ("Sanders") (Doc. 66). Plaintiffs oppose each motion. (Docs. 68, 69.) For the reasons below, the motion by the City is denied and the motions by Wray, Brady, and Sanders (collectively "the GPD Defendants") are granted in part and denied in part.

## I. BACKGROUND

Plaintiffs are all African-American/black police officers employed by the City through the Greensboro Police Department ("GPD") when Wray was promoted to Chief of Police and Brady to Deputy Chief. Wray, Brady, and Sanders (formerly an investigator with the GPD's Special Intelligence Section ("SID")) are all white.

This action, removed to this court on April 17, 2009, originally encompassed a variety of claims against the City, Wray, Brady, Sanders, and Greensboro City Council member Trudy Wade ("Wade") under 42 U.S.C. §§ 1981, 1983, and 1985, as well as North Carolina contract and tort law, based generally upon (i) alleged discriminatory actions taken or directed by Wray, Brady, Sanders, and other nonblack GPD officers and (ii) Wade's

alleged public release of confidential information concerning settlement negotiations between Plaintiffs and the City.[1]  This court's January 5, 2011, Memorandum Opinion and Order contains a detailed summary of Plaintiffs' allegations, which will not be repeated here.  See Alexander v. City of Greensboro, 762 F. Supp. 2d 764, 776-79 (M.D.N.C. 2011).

Defendants moved for dismissal of Plaintiffs' claims pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6) (Docs. 22, 24, 27, 29), while Plaintiffs contemporaneously moved for leave to file their Second Amended Complaint ("SAC") (Doc. 32).  In response to these motions, the court dismissed several of Plaintiffs' claims, permitting them to file their SAC and proceed only as to the following: (1) Plaintiffs' breach-of-contract claim against the City; (2) claims under 42 U.S.C. § 1981 against the GPD Defendants in their individual capacities for (a) hostile work environment as to all Plaintiffs, (b) disparate treatment as to Plaintiff Steven A. Evans ("Evans"), and (c) disparate discipline as to

---

[1]  In a companion action commenced in this court on December 7, 2009, Plaintiffs brought claims against the City for discrimination on the basis of race in violation of Title VII of the Civil Rights Act of 1964 (as amended), 42 U.S.C. § 2000e et seq.  (Case No. 1:09-CV-934.) The court later dismissed all claims by Plaintiffs Ahmed Blake, Larry Patterson Jr., Frank Young, Darryl Stevenson, and Mitchell Alston and dismissed all claims by the remaining thirty-five Plaintiffs except (i) each remaining Plaintiff's hostile work environment claim, (ii) Plaintiff Steven A. Evans' disparate treatment claim, and (iii) Plaintiff Lawrence Alexander Jr.'s disparate treatment claim. Alexander v. City of Greensboro, No. 1:09-CV-934, 2011 WL 13857, at *23 (M.D.N.C. Jan. 4, 2011).

Plaintiff Lawrence Alexander Jr.; (3) claims under 42 U.S.C.
§ 1983 against the GPD Defendants in their individual capacities
for (a) Equal Protection violations as to all Plaintiffs and
(b) Fourth Amendment violations as to Plaintiff Antuan Hinson
("Hinson"); (4) Hinson's invasion-of-privacy claim against the
GPD Defendants in their individual capacities; and
(5) Plaintiffs' claim against Wade in her individual capacity
for tortious interference with prospective economic advantage.
Alexander, 762 F. Supp. 2d at 825-26.

Plaintiffs subsequently filed their SAC in compliance with
the court's order (Docs. 50, 51), and Defendants filed Answers
to the SAC (Docs. 52, 53, 60, 61). The City, Wray, Brady, and
Sanders now move for judgment on the pleadings pursuant to
Federal Rule of Civil Procedure 12(c) as to certain of
Plaintiffs' claims.[2] (Docs. 62, 64, 66.) These motions have
been fully briefed and are ready for decision.

## II. ANALYSIS

### A. Standard for Rule 12(c) Motions

A motion for judgment on the pleadings pursuant to Federal
Rule of Civil Procedure 12(c) is analyzed under the same
standard as a motion to dismiss for failure to state a claim
under Federal Rule of Civil Procedure 12(b)(6). See Burbach
Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 405-06

---

[2] Wade has not filed a Rule 12(c) motion.

(4th Cir. 2002). Thus, the court assumes the factual allegations in the SAC to be true and draws all reasonable factual inferences in Plaintiffs' favor as the nonmoving parties. See id. at 406.

Unlike on a Rule 12(b)(6) motion, however, on a Rule 12(c) motion the court may consider the Answer as well. Rinaldi v. CCX, Inc., No. 3:05-CV-108, 2008 WL 2622971, at *2 n.3 (W.D.N.C. July 2, 2008). The factual allegations of the Answer "are taken as true only where and to the extent they have not been denied or do not conflict with the complaint." Jadoff v. Gleason, 140 F.R.D. 330, 331 (M.D.N.C. 1991). "For the purposes of this motion [the defendant] cannot rely on allegations of fact contained only in the answer, including affirmative defenses, which contradict [the] complaint," because "Plaintiffs were not required to reply to [the] answer, and all allegations in the answer are deemed denied." Id. at 332; see Fed. R. Civ. P. 8(b)(6) ("If a responsive pleading is not required, an allegation is considered denied or avoided.").

"The test applicable for judgment on the pleadings is whether or not, when viewed in the light most favorable to the party against whom the motion is made, genuine issues of material fact remain or whether the case can be decided as a matter of law." Smith v. McDonald, 562 F. Supp. 829, 842 (M.D.N.C. 1983), aff'd, 737 F.2d 427 (4th Cir. 1984), aff'd, 472

U.S. 479 (1985); accord Med-Trans Corp. v. Benton, 581 F. Supp. 2d 721, 728 (E.D.N.C. 2008); Jadoff, 140 F.R.D. at 331; 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1368, at 223 (3d ed. 2004); see id. § 1368, at 248 ("A motion for judgment on the pleadings under Rule 12(c) may be granted only if all material issues can be resolved on the pleadings by the district court . . . .").

**B.  The City's Rule 12(c) Motion**

The City moves for dismissal of Plaintiffs' breach-of-contract claim, their only remaining claim against the City. (Doc. 62.)  Plaintiffs allege that on March 4, 2008, in an effort to resolve Plaintiffs' complaints about alleged racial discrimination within the GPD, the acting Greensboro City Attorney drafted and insisted that Plaintiffs and the City sign a "Stipulation" that required that discussions related to resolving their disputes be kept confidential.  (Doc. 50 ¶¶ 117-18.)  Although the SAC does not quote the Stipulation at any length, the City has attached a copy to its Answer.  The Stipulation provides in relevant part:

> The Attorneys for the Greensboro police officers that filed charges of racial discrimination with the EEOC [United States Equal Employment Opportunity Commission], the Acting City Attorney, the Mayor of Greensboro, the Director of the Greensboro Local Office, and the two Investigators with the EEOC charged with investigating the charges filed by Greensboro police officers have agreed to meet in an effort to discuss possible resolution of the matters

pending with the EEOC. In discussing possible settlement, certain personnel matters that are confidential by law may need to be discussed. In an effort to have a meaningful settlement discussion without concern that confidential matters not be discussed outside the context of the settlement meeting, counsel for the parties have agreed to keep all discussions kept [sic] confidential.

IT IS HEREBY STIPULATED AND AGREED by and between the parties to this stipulation, through their undersigned counsel, that:

1. This stipulation shall govern any statement or information by any party, to any other party in connection with the mediation of this action.

2. No person who receives any statement or information during the mediation shall disclose it to any non-party for any purpose.

(Doc. 61, Ex. A at 2.) The Stipulation is signed by the City Attorney, the Mayor of Greensboro, and Plaintiffs' counsel as "Counsel for Charging Parties"; an attached second page bears signatures of six individuals, five of whom are Plaintiffs in this action. (See id. at 2-3.)

Plaintiffs allege that the City breached the Stipulation as follows: On October 21, 2008, the Greensboro City Council held a closed-session meeting, and on November 3, 2008, the City submitted a written offer to settle Plaintiffs' claims for a specific monetary amount. (Doc. 50 ¶¶ 122, 125.) No Plaintiff, representative of Plaintiffs, or media had been present at the meeting. (Id. ¶¶ 123-24.) Plaintiffs allege that, "in an

effort to derail the settlement," City Council member Wade encouraged a local newspaper reporter to submit a "purported" public records request for the settlement information, which the reporter did. (Id. ¶¶ 127, 129.) Wade allegedly responded to the request by providing the reporter Plaintiffs' names (received through Wade's own "purported" public records request) and the monetary amount offered by the City, which was not publicly available but had been revealed to Wade in her capacity as a City Council member. (Id. ¶¶ 128-29.) On November 13, 2008, the reporter published an article in a local newspaper containing all Plaintiffs' names and the amount of the City's settlement offer. (Id. ¶¶ 126, 132.) Thereafter, numerous constituents unhappy with the proposed offer conveyed their objections to the City Council, including during the open session of a scheduled City Council meeting, immediately after which the City Council voted to rescind the offer. (Id. ¶¶ 135, 137-39.) On November 19, 2008, the City formally withdrew the offer. (Id. ¶ 140.) Plaintiffs contend that Wade's alleged disclosures constituted a breach of the Stipulation by the City.

### 1. Plaintiffs' Rule 12(g)(2) Argument for Summary Denial

Plaintiffs argue preliminarily that the City's pending Rule 12(c) motion to dismiss their breach-of-contract claim should be

summarily denied pursuant to Federal Rule of Civil Procedure 12(g)(2), which provides:

> Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.

Fed. R. Civ. P. 12(g)(2). Plaintiffs argue that the City's Rule 12(c) motion falls squarely within this prohibition, because the defenses raised in the Rule 12(c) motion were allegedly available when the City filed its Rule 12(b)(6) motion to dismiss, but the City chose not to raise them at that time. The City responds that Rule 12(g)(2) does not apply to Rule 12(c) motions and that the arguments in the pending motion were not available to the City at the Rule 12(b)(6) stage.

As the City points out, Rule 12(g)(2) begins with the phrase "[e]xcept as provided in Rule 12(h)(2) or (3)." Rule 12(h)(2) provides in pertinent part:

> Failure to state a claim upon which relief can be granted . . . may be raised . . . by a motion under Rule 12(c) . . . .

Fed. R. Civ. P. 12(h)(2)(B). Thus, Rule 12(c) motions for judgment on the pleadings based upon failure to state a claim are explicitly exempted from the prohibition in Rule 12(g)(2). Cf. Tatum v. R.J. Reynolds Tobacco Co., No. 1:02-CV-373, 2007 WL 1612580, at *6 (M.D.N.C. May 31, 2007) ("Taken together, Rules 12(g) and 12(h)(2) prohibit Defendants from filing a successive

Rule 12(b)(6) motion *unless it is included in their answer or in a Rule 12(c) motion after pleadings are closed.*" (emphasis added)).

The only case law cited by Plaintiffs in support of their argument is inapplicable, because it involves successive motions brought pursuant to *Rule 12(b)*. See <u>Partington v. Am. Int'l Specialty Lines Ins. Co.</u>, No. 1:03-CV-1084, Doc. 15 at 1-2 (M.D.N.C. May 18, 2004); <u>cf.</u> Wright & Miller, <u>supra</u>, § 1384, at 479-80 ("[Rule 12(g)] contemplates the presentation of an omnibus *pre-answer motion* in which the defendant advances every available Rule 12 defense and objection he may have that is assertable by motion. . . . Any defense that is available at the time of the original motion, but is not included, may not be the basis of a second *pre-answer motion*." (emphases added)).

Therefore, Rule 12(g)(2) does not bar the City's Rule 12(c) motion, and it is unnecessary to determine whether the City's present arguments were available at the Rule 12(b)(6) stage. Consequently, the court will proceed to the merits of the City's motion. In so doing, however, the court will not reconsider issues that it addressed fully at the Rule 12(b)(6) stage.

## 2. The City's Arguments for Dismissal

The City argues that Plaintiffs' breach-of-contract claim should be dismissed because (1) not all Plaintiffs were parties to the Stipulation and the nonparty Plaintiffs lack standing to

bring this claim; (2) actions by an individual City Council member cannot bind the City; and (3) the information allegedly disclosed by Wade was not covered by the Stipulation. Each argument will be examined in turn.

### a. Whether Plaintiffs Possess Standing

The City points out that nonparties to a contract generally do not have standing to sue for breach of that contract, see Meyer v. McCarley & Co., 288 N.C. 62, 70-71, 215 S.E.2d 583, 588 (1975),[3] and argues that not all Plaintiffs were parties to the Stipulation. The City relies upon the copy of the Stipulation attached to its Answer, which the court may consider at this stage because it is attached to the pleadings, see, e.g., Bradley v. Ramsey, 329 F. Supp. 2d 617, 622 (W.D.N.C. 2004), it is central to Plaintiffs' claim, see, e.g., Lefkoe v. Jos. A. Bank Clothiers, No. 06-CV-1892, 2008 WL 7275126, at *3-*5 (D. Md. May 13, 2008) (citing Horsley v. Feldt, 304 F.3d 1125, 1134-35 (11th Cir. 2002)), and Plaintiffs do not dispute its authenticity, see, e.g., id.[4] Plaintiffs respond that they were

---

[3] "The only exception in contract to the privity barrier is for actions brought by third party beneficiaries to a contract." RPR & Assocs. v. O'Brien/Atkins Assocs., P.A., 24 F. Supp. 2d 515, 520 (M.D.N.C. 1998) (citing Meyer, 288 N.C. at 70, 215 S.E.2d at 588). Plaintiffs have not argued that they enjoy this status.

[4] Cf. Fisher v. Md. Dep't of Pub. Safety & Corr. Servs., No. 10-CV-0206, 2010 WL 2732334, at *2 (D. Md. July 8, 2010) (noting that courts have found documents that "constitute the core of the parties' contractual relationship" to be "integral" to a breach-of-contract claim and thus available for consideration at the Rule 12(b)(6) stage

all parties to the Stipulation, as alleged in the SAC (<u>see</u> Doc. 50 ¶¶ 118, 120).[5]

### i. Whether Plaintiffs' Attorneys Signed the Stipulation as Plaintiffs' Agents

The City first argues that only the five Plaintiffs who signed the Stipulation were parties to it and may pursue a breach-of-contract claim.[6] The remaining Plaintiffs respond that their attorneys, acting as their agents, signed the Stipulation on their behalf.

"The attorney-client relationship is based upon principles of agency." <u>Harris v. Ray Johnson Constr. Co.</u>, 139 N.C. App.

---

(citing <u>Venture Assocs. Corp. v. Zenith Data Sys. Corp.</u>, 987 F.2d 429, 431-32 (7th Cir. 1993))).

[5] The City does not argue that Article III jurisdictional standing is at issue. <u>Cf. Lindsey v. Starwood Hotels & Resorts Worldwide Inc.</u>, 409 F. App'x 77, 78 (9th Cir. 2010) (unpublished per curiam opinion) ("Whether a plaintiff possesses legally enforceable rights under a contract is a question on the merits rather than a question of constitutional standing."); <u>Blanchard 1986, Ltd. v. Park Plantation, LLC</u>, 553 F.3d 405, 409 (5th Cir. 2008) (distinguishing between "statutory standing," a merits question, and "constitutional standing," a jurisdictional question); <u>Novartis Seeds, Inc. v. Monsanto Co.</u>, 190 F.3d 868, 871 (8th Cir. 1999) (holding that Article III "standing" was not implicated where the defendant in a breach-of-contract action argued that an earlier breach by the plaintiff's parent company had terminated the contract and thus deprived the plaintiff of "standing" under the contract). <u>But see Ocwen Loan Servicing, LLC v. Accredited Home Lenders, Inc.</u>, No. 6:08-CV-214, 2009 WL 722406, at *4-*5 (M.D. Fla. Mar. 18, 2009) (indicating that a "contractual standing" deficiency can implicate the "injury in fact" requirement of Article III standing).

[6] The City states that six Plaintiffs signed the Stipulation. (Doc. 63 at 5.) Only five Plaintiffs did so, however: Ernest Cuthbertson, Jonathan Heard, Charles E. Cherry, Brian James, and William Graves. (<u>See</u> Doc. 61, Ex. A at 3.) The sixth signature belongs to Bobby A. Edwards (<u>see id.</u>), who is not a Plaintiff in this action.

827, 830, 534 S.E.2d 653, 655 (2000) (citing <u>Dunkley v.</u>
<u>Shoemate</u>, 350 N.C. 573, 577, 515 S.E.2d 442, 444 (1999)). "A
principal is liable upon a contract duly made by his agent with
a third person (1) when the agent acts within the scope of his
actual authority; (2) when the contract, although unauthorized,
has been ratified; [or] (3) when the agent acts within the scope
of his apparent authority, unless the third person has notice
that the agent is exceeding his actual authority." <u>Inv. Props.</u>
<u>of Asheville, Inc. v. Allen</u>, 283 N.C. 277, 285-86, 196 S.E.2d
262, 267 (1973). "[T]here is a presumption in North Carolina in
favor of an attorney's authority to act for the client he
professes to represent." <u>Harris</u>, 139 N.C. App. at 829, 534
S.E.2d at 654. Plaintiffs argue that these principles apply
here.

The Stipulation itself is less than clear. It begins by
stating that "[t]he Attorneys for the Greensboro police officers
that filed charges of racial discrimination with the EEOC . . .
have agreed to meet" with the Acting City Attorney, the Mayor,
and several EEOC officers. (Doc. 61, Ex. A at 2.) It then
states that "counsel for the parties have agreed to keep all
discussions kept [sic] confidential." (<u>Id.</u>) This language
alone might be read as indicating that the agreement was made
*between the parties' attorneys*. More likely, however, it simply
constitutes a preamble identifying the attorneys and laying out

the context of the agreement. In any event, it does not expressly bind any *party* to any agreement to keep discussions confidential.

The Stipulation then provides, in pertinent part, that "IT IS HEREBY STIPULATED AND AGREED by and between *the parties to this stipulation, through their undersigned counsel*," that the Stipulation "shall govern any statement or information by any party, to any other party in connection with the mediation of this action" and that "[n]o person who receives any statement or information during the mediation shall disclose it to any non-party for any purpose." (<u>Id.</u> (emphasis added).) Plaintiffs' attorneys both signed as "Counsel for Charging Parties." (<u>Id.</u>) Thus, considering the Stipulation as a whole, Plaintiffs' allegation that their attorneys signed the Stipulation as agents for Plaintiffs (or at least for those Plaintiffs "that filed charges of racial discrimination with the EEOC") is plausible. This interpretation is consistent with Plaintiffs' allegations that they were parties to the Stipulation. (<u>See</u> Doc. 50 ¶¶ 118, 120; <u>see also</u> <u>id.</u> ¶ 155 ("Plaintiffs have performed all conditions and agreements required under the terms of the Agreement by not disclosing any information protected by law or by the Agreement.").)

"Whenever a court is called upon to interpret a contract its primary purpose is to ascertain the intention of the parties

at the moment of its execution." Lane v. Scarborough, 284 N.C. 407, 409-10, 200 S.E.2d 622, 624 (1973). "When a contract is in writing and free from any ambiguity which would require resort to extrinsic evidence, or the consideration of disputed fact, the intention of the parties is a question of law." Id. at 410, 200 S.E.2d at 624. "If the contract is ambiguous, however, interpretation is a question of fact . . . and resort to extrinsic evidence is necessary . . . ." Crider v. Jones Island Club, Inc., 147 N.C. App. 262, 266-67, 554 S.E.2d 863, 866 (2001) (citations omitted). "An ambiguity exists in a contract when either the meaning of words or the effect of provisions is uncertain or capable of several reasonable interpretations." Register v. White, 358 N.C. 691, 695, 599 S.E.2d 549, 553 (2004).

Viewing the Stipulation in the light most favorable to Plaintiffs, as the court must at this preliminary stage, it cannot be said that it is free from ambiguity as to whether Plaintiffs' counsel were acting on behalf of their clients. Therefore, the court cannot say as a matter of law, based on the parties' pleadings and the Stipulation, that Plaintiffs' attorneys did not sign the Stipulation on their behalf. Consequently, the City's Rule 12(c) motion will be denied without prejudice to this extent.

Next,  the  City  argues  in  the  alternative  that  the
Stipulation covered only those Plaintiffs who "filed charges of
racial discrimination with the EEOC" (Doc. 61, Ex. A at 2) and
that thirteen Plaintiffs thus lack standing because they did not
file Charges of discrimination with the EEOC.  These Plaintiffs
fall into two groups, which will be addressed separately.

The first group consists of ten Plaintiffs who filed Intake
Questionnaires with the EEOC but never filed "formal" Charges.[7]
The City relies upon the record in Plaintiffs' companion Title
VII action,[8] in which the City submitted the EEOC files of each
of these ten Plaintiffs.  <u>See</u> Defendant City of Greensboro's
Answer to Amended Complaint, Exs. B to K, <u>Alexander v. City of
Greensboro</u>, No. 1:09-CV-934 (M.D.N.C. Feb. 3, 2011).  Each file
contains an Intake Questionnaire but no "formal" Charge, <u>see
id.,</u> and the City contends that the ten Plaintiffs thus fall

---

[7]   These Plaintiffs are Steven A. Evans, George M. Little, Darrell
McDonald, C.L. Melvin, Willie Parker, William A. Phifer, Joseph Pryor,
Norman Rankin, Calvin Stevens Jr., and Michael Wayland Wall.  The City
concedes that Plaintiff Ernest Cuthbertson, who would otherwise fall
within this group, actually signed the Stipulation and is clearly a
party to it.  (Doc. 70 at 8 n.3; <u>see</u> Doc. 61, Ex. A at 3.)

[8]   A court may take judicial notice of "public records" on a Rule 12(c)
motion.   <u>See, e.g.</u>, <u>Etters v. Bennett</u>, No. 5:09-CT-3187, 2011 WL
976472, at *4 (E.D.N.C. Mar. 16, 2011); <u>cf.</u> <u>Walker v. Kelly</u>, 589 F.3d
127, 139 (4th Cir. 2009) ("[A] federal court may consider matters of
public record such as documents from prior state court proceedings in
conjunction with a Rule 12(b)(6) motion."), <u>cert. denied</u>, 130 S. Ct.
3318 (2010).

outside the group of "Greensboro police officers that filed charges of racial discrimination with the EEOC" (Doc. 61, Ex. A at 2).

This court recently rejected the City's argument in the companion action. See Alexander v. City of Greensboro, No. 1:09-CV-934, 2011 WL 2730707, at *3-*7 (M.D.N.C. July 13, 2011). The court held that these ten Plaintiffs' Intake Questionnaires constituted sufficient Charges, observing that they were treated as Charges by the EEOC, which notified the City of this in November 2007, several months prior to the signing of the Stipulation. See id. at *5, *7; see also, e.g., Defendant City of Greensboro's Answer to Amended Complaint, Ex. B, supra, at 6, 13. Therefore, even taking judicial notice of the filings in the companion action, the court cannot say as a matter of law that the ten Plaintiffs lack contractual standing for failure to file EEOC Charges.

The second group consists of three Plaintiffs who never filed anything with the EEOC, according to the City.[9] In its original brief, the City offered no support for this assertion, merely stating that "[i]t is unclear at this time if [the three

---

[9] These Plaintiffs are Larry Patterson Jr., Frank Young, and Darryl Stevenson. (Darryl Stevenson is identified as a Plaintiff in paragraph 25 of the SAC but has never been listed in the caption or introductory paragraph of any of Plaintiffs' complaints in this action.) All three were dismissed previously from the companion Title VII action for failure to receive "right-to-sue letters." See Alexander, 2011 WL 13857, at *4-*5.

Plaintiffs] filed EEOC Charges." (Doc. 63 at 6 n.3.) The City attached to its reply brief, however, a letter from the EEOC that it says it received pursuant to a Freedom of Information Act ("FOIA") request for documents relating to the three Plaintiffs. (Doc. 70, Ex. A.) The letter states that "[n]o records fitting the description of the records you seek disclosed exist or could be located after a thorough search." (Id. at 2.) The City contends that the letter establishes that the three Plaintiffs never filed anything with the EEOC.

The City's exhibit raises a question of fact, which cannot be resolved at the Rule 12(c) stage. The letter is not part of the pleadings, nor is it a document central to Plaintiffs' claim. Cf. Lefkoe, 2008 WL 7275126, at *3-*5 (holding that on a Rule 12(c) motion, a court may consider attachments to the answer if they are central to the plaintiff's claim and of undisputed authenticity). Moreover, the letter was filed with the City's reply brief, leaving Plaintiffs no opportunity to respond, and it fails to reveal the nature or extent of the City's unsuccessful FOIA request, except that it related to the three Plaintiffs. Therefore, it is unclear whether the court may infer from the letter that they filed nothing with the EEOC at any time. Consequently, the court will not consider the letter at this juncture, and the City's Rule 12(c) motion for

judgment on the pleadings based on lack of contractual standing
will be denied without prejudice.[10]

### b. Whether the City Can Be Held Liable in Contract for Wade's Alleged Actions

The City's next argument is that it cannot be liable for
breach of the Stipulation based on Wade's alleged actions
because they were outside the scope of her authority as a City
Council member. As Plaintiffs point out, the court addressed
this issue in part in denying the City's Rule 12(b)(6) motion
based on this argument. See Alexander, 762 F. Supp. 2d at 809-
10. The City contends that it has now admitted in its Answer
that Wade's alleged disclosures, if they occurred, were beyond
the scope of her authority as a City Council member. Thus, the
City argues, it cannot be liable for them, relying on the basic
proposition that a "principal is not liable when [his] agent is
about his own business, or is acting beyond the scope and range
of his employment." Merritt, Flebotte, Wilson, Webb & Caruso,
PLLC v. Hemmings, 196 N.C. App. 600, 607, 676 S.E.2d 79, 85
(2009) (quoting Snow v. DeButts, 212 N.C. 120, 123, 193 S.E.
224, 227 (1937)), review denied, 363 N.C. 655, 686 S.E.2d 518
(2009).

---

[10] Plaintiffs and their counsel are bound, of course, by Federal Rule
of Civil Procedure 11 and its remedies as to their representations
that all Plaintiffs were parties to the Stipulation (see Doc. 50
¶¶ 118, 120) and had filed EEOC Charges (see, e.g., Doc. 68 at 5
(asserting in Plaintiffs' response brief that "each [Plaintiff] had
filed EEOC charges and had been assigned a charge number by the
EEOC")).

The City begins by pointing to section 3.23 of the Greensboro City Charter, which it attached to its Answer (see Doc. 61, Ex. B) and which provides in pertinent part as follows:

> A majority of the members of the Council shall constitute a quorum to do business, but a less number may adjourn from time to time and compel the attendance of absent members by ordering them to be taken into custody. The affirmative vote of a majority of the members of the Council shall be necessary to adopt any ordinance. All other matters voted upon shall be by majority vote of the Council members present but no ordinance shall be adopted on the same day it is introduced unless six affirmative votes are received in favor of it. Nevertheless, with respect to any ordinance amending the budget to appropriate funds from the Unappropriated Fund Balance of the General Fund, the affirmative vote of seven members of the council shall be necessary to adopt any such amendment, except in case of an emergency.

Greensboro, N.C., Charter § 3.23(b). The City argues from this provision that "a majority vote from a quorum of City Council members is necessary to take action that binds the City," so an individual City Council member's actions cannot bind the City. (Doc. 63 at 7.)

The Charter provision establishes that all matters to be voted upon require a quorum and that Wade could not unilaterally *enter into* a contract on behalf of the City (and thereby bind the City) without a majority vote from a quorum of City Council members. The provision does not address, however, whether an action by Wade within the scope of her authority as a City Council member could render the City liable for *breach* of a

contract previously entered into by the Mayor. Nor does the provision establish what types of actions fall within the scope of a City Council member's authority.

Next, the City relies on two cases. The first is <u>Burns v. Harris County Bail Bond Board</u>, 139 F.3d 513 (5th Cir. 1998), in which the Fifth Circuit held that a county bail bond board could not be held vicariously liable under 42 U.S.C. § 1983 for the alleged constitutional wrongs of its individual members but was liable only if "it can be fairly said that the entity itself is the wrongdoer." <u>Id.</u> at 521. This was merely an application of the principle that a municipality cannot be held liable under § 1983 on a *respondeat superior* theory, <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 691-92 (1978), but is only liable if the plaintiff's injury was pursuant to an "official policy or custom that is fairly attributable to the municipality," <u>Jordan ex rel. Jordan v. Jackson</u>, 15 F.3d 333, 338 (4th Cir. 1994).[11] Thus, <u>Burns</u> is not applicable to a North Carolina breach-of-contract claim.

The second case is <u>Merritt</u>, 196 N.C. App. 600, 676 S.E.2d 79, which the court distinguished in its earlier decision, <u>see Alexander</u>, 762 F. Supp. 2d at 809-10. <u>Merritt</u> involved a non-disparagement clause in a settlement agreement. <u>See</u> 196 N.C.

---

[11] The court previously applied this very principle in dismissing all claims against the City under 42 U.S.C. §§ 1981 and 1983. <u>See Alexander</u>, 762 F. Supp. 2d at 781-84.

App. at 602-03, 606-08, 676 S.E.2d at 82, 84-86. The defendants claimed that the plaintiffs — a law firm and its partners — had breached the non-disparagement clause based on comments that the firm's office administrator had made to a social acquaintance in a bar. Id. at 606-07, 676 S.E.2d at 85. The Merritt court noted, however, that the non-disparagement clause only covered intentional statements made by "parties." Id. at 606, 676 S.E.2d at 84-85. Observing that "[p]resumably the words which the parties select [for inclusion in a contract are] deliberately chosen and are to be given their ordinary significance," and based on uncontested evidence that the office administrator acted outside the scope of his employment when making his comments, the court affirmed the dismissal of the claim on summary judgment. Id. at 606-08, 676 S.E.2d at 85-86 (second alteration in original) (quoting Wise v. Harrington Grove Cmty. Ass'n, 357 N.C. 396, 405, 584 S.E.2d 731, 738 (2003)). Here, the Stipulation prohibits any "person" from disclosing "any statement or information [received] during the mediation" "for any purpose." (Doc. 61, Ex. A at 2.) Plaintiffs allege that the City drafted the Stipulation (Doc. 50 ¶¶ 117, 119), and the court assumes (at least at this preliminary stage), as did the Merritt court, that the City intentionally chose the term "person," rather than the term "party" (which is used elsewhere in the Stipulation).

Accordingly, Wade may constitute a "person" potentially bound by the Stipulation.

Finally, the City relies once again upon Plaintiffs' assertion in the SAC that "Defendants' public disclosure of confidential and protected personnel information . . . so exceeded their authority as to amount to a waiver of any possible immunity afforded to State employees or officials." (Doc. 50 ¶ 150.) As the court previously observed, "this statement is conclusory, conflicts with other assertions by the Plaintiffs . . . (*see, e.g.*, *id.* [¶¶ 143, 147-48, 156]), and was likely inserted in an effort to preempt immunity defenses by other Defendants."[12] <u>Alexander</u>, 762 F. Supp. 2d at 810. On the other hand, Plaintiffs' specific factual allegations — that Wade attended a closed session of the City Council "in her capacity as an elected member" (Doc. 50 ¶ 128), made a "purported" public records request (<u>id.</u> ¶¶ 128-29), received a "purported" public records request from a news reporter (<u>id.</u> ¶ 127), and responded to that request (<u>id.</u> ¶ 128) — plausibly support a reasonable inference that Wade acted within the scope of her authority as a City Council member, particularly in the absence of any clear legal authority provided by the parties concerning municipal

---

[12] The court held elsewhere that the assertion was too conclusory to prevent the application of public official immunity to bar Plaintiffs' gross negligence claim against Wade. See <u>Alexander</u>, 762 F. Supp. 2d at 823.

liability in contract for acts of a council member. For these reasons, the court denied the City's Rule 12(b)(6) motion based on Plaintiffs' assertion that Wade exceeded her authority, noting that Plaintiffs are permitted to plead in the alternative, regardless of consistency, under Federal Rule of Civil Procedure 8(d)(3). See Alexander, 762 F. Supp. 2d at 810.

The City now makes the same argument again, contending that the result should be different because it has admitted to Plaintiffs' conclusory "exceeded their authority" assertion in its Answer (see Doc. 61 ¶ 150) and denied Plaintiffs' allegations indicating any responsibility on the City's part for the alleged breach of the Stipulation. The City argues, consequently, that there is agreement among the parties that Wade acted outside the scope of her authority, so Plaintiffs' breach-of-contract claim should be dismissed.

Though clever, the City's admission does not change the result. The right of a plaintiff to plead in the alternative, regardless of consistency,[13] would be rendered meaningless if a

---

[13]  See generally Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."); Shelton v. Safeway, Inc., No. 10-CV-2358, 2011 WL 1869827, at *9 (D. Md. May 16, 2011) (permitting tort claims to proceed at the Rule 12(c) stage, where the claims were based on the defendant's alleged vicarious liability for actions of a security guard and the security guard was alleged to be "acting within the scope of his/her employment as an . . . employee . . . of the defendant," even though the plaintiffs' amended complaint also referred to the security guard as a "contractor," because "[t]he fact that allegations pled in the alternative may not support [the vicarious-liability theory] is of no

defendant in its answer could admit to the allegations most favorable to it, deny the unfavorable ones, and thereby select which of the alternative claims proceeds. Therefore, in the absence of any clear North Carolina authority from the parties concerning municipal liability for breach of contract based on actions by a council member,[14] and because the scope of the Stipulation remains unclear,[15] judgment on the pleadings as a matter of law is inappropriate. The City's Rule 12(c) motion

---

moment"); Day v. DB Capital Grp., LLC, No. 10-CV-1658, 2011 WL 887554, at *16 (D. Md. Mar. 11, 2011) ("While ultimately plaintiff may be unable to recover under both his unjust enrichment and breach of contract claims, he may continue to pursue them both at this time [i.e., the Rule 12(b)(6) stage].").

[14] Courts in other states have held municipalities responsible for actions of individual council members under limited circumstances. See, e.g., Denke v. Shoemaker, 2008 MT 418, ¶¶ 11-14, 69-88, 347 Mont. 322, 198 P.3d 284 (holding that a city councilperson was acting in his capacity as a councilperson when he wrote and publicly circulated two letters containing reckless statements and provably false innuendo about the city clerk, which constituted illegal retaliation under state civil rights law, and that the city was liable under *respondeat superior* for the councilperson's retaliatory actions); see also Corp. of Harpers Ferry v. Taylor, __ S.E.2d __, 2011 WL 2118717, at *3-*4 (W. Va. May 26, 2011) (per curiam) (holding that a city council member's failure to recuse himself from council discussions despite a conflict of interest and his "active and persistent pattern of direct communication with City Council members and other City officials in an effort to prevent [the plaintiff] from accessing his property" constituted "vexatious" conduct for which the city could be "held responsible . . . with respect to attorney's fees" under a state statute rendering municipalities liable for acts of employees "within the scope of employment"). But cf. Interfaith Hous. Del., Inc. v. Town of Georgetown, 841 F. Supp. 1393, 1399-1400 (D. Del. 1994) (holding, under Delaware law, that a statement by a single town council member did not constitute an effective waiver of the town's attorney-client privilege protecting communications between the town and its solicitor).

[15] That is, whether the Stipulation bound all City officials, only the signing officials (the City Attorney and Mayor), or some other group.

based on the alleged absence of municipal liability for Wade's actions will be denied without prejudice for further legal and factual development.

### c. Whether the Allegedly Disclosed Information Was Covered by the Stipulation

The City's last argument is that the information allegedly disclosed by Wade did not fall under the Stipulation's provision that "[n]o person who *receives* any statement or information during the mediation shall disclose it to any non-party for any purpose." (Doc. 61, Ex. A at 2 (emphasis added).) The City argues that Plaintiffs' names and the amount of the City's settlement offer were not information "received" by the City during the mediation.

The City has the better argument as to the settlement offer amount, because the SAC explicitly alleges that this amount originated with the City, which conveyed it to Plaintiffs. (See Doc. 50 ¶ 125.) It is unclear on this record, however, whether Plaintiffs' names (that is, the identities of the GPD officers involved in the mediation) were received by the City during the mediation or whether the City obtained the names by another method or at an earlier time. Because this is a question of fact, the court cannot rule on this issue as a matter of law at

this point, and the City's Rule 12(c) motion will be denied without prejudice. [16]

## C. The GPD Defendants' Rule 12(c) Motions

Wray, Brady, and Sanders move for partial judgment on the pleadings, seeking dismissal of the following claims: (i) Evans' disparate treatment claim under 42 U.S.C. § 1981 against Brady and Sanders; (ii) Plaintiffs' Equal Protection claims under 42 U.S.C. § 1983 against the GPD Defendants; (iii) Hinson's Fourth Amendment claim under § 1983 against the GPD Defendants; and (iv) Hinson's invasion-of-privacy claim against the GPD Defendants. (Docs. 64, 66.)

### 1. Evans' Disparate Treatment Claim

Evans alleges that although he was the only black GPD officer certified as a marksmanship instructor, Wray appointed white officers, not Evans, as instructors at local community colleges and/or the Greensboro Police Academy, and that had

---

[16] The court is aware that the case is at a very preliminary stage. But because the contract claim is the only remaining claim against the City, the parties must eventually consider whether, even assuming a breach of the Stipulation can be shown, Plaintiffs could recover any more than nominal damages. There is no allegation that the City lacked the right to withdraw (for any reason and before acceptance) any offer it allegedly made, as it did. Moreover, on its face the Stipulation does not establish any right to consequential damages. Cf. Blis Day Spa, LLC v. Hartford Ins. Grp., 427 F. Supp. 2d 621, 638 (W.D.N.C. 2006) ("In order to determine whether at the time of contracting consequential damages were within the contemplation of the parties, courts shall consider whether there existed a specific provision or language in the [contract] itself permitting recovery of consequential damages, the nature of the contract itself, or whether such circumstances or conditions as presume special damages were communicated to the defendant").

Evans obtained one of these appointments, he would have been compensated for his instruction. (Doc. 50 ¶ 109.) The court previously held that Evans' factual allegations, taken as a whole, plausibly gave rise to an inference that Evans may have been denied the instructing appointments on the basis of his race. See Alexander, 762 F. Supp. 2d at 795. Consequently, the GPD Defendants' Rule 12(b)(6) motions to dismiss were denied as to Evans' disparate treatment claim under § 1981. See id. Brady and Sanders now point out that Evans' disparate treatment allegations do not mention either of them but attribute the alleged discrimination solely to Wray. (See Doc. 50 ¶ 109.) They contend, therefore, that Evans has not plausibly stated a claim for disparate treatment against them, and Evans does not respond.

Having reviewed the factual allegations in the SAC addressing Evans' alleged disparate treatment, the court agrees that they do not plausibly state a claim against Brady and Sanders. Cf. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007) (holding that to state a claim a plaintiff must provide sufficient factual allegations "to raise a right to relief above the speculative level" so as to "nudge[] the[] claim[] across the line from conceivable to plausible"). Therefore, Evans' disparate treatment claims against Brady and Sanders under § 1981 will be dismissed.

### 2. Plaintiffs' Equal Protection Claims, Hinson's Fourth Amendment Claim, and Hinson's Invasion-of-Privacy Claim

According to the SAC, Plaintiffs' Equal Protection claims under § 1983, Hinson's Fourth Amendment claim under § 1983, and Hinson's invasion-of-privacy claim are based upon alleged actions taken by the GPD Defendants "while said Defendants were employed by the Defendant Greensboro." (Doc. 50 ¶ 113.) The GPD Defendants argue that the dates upon which their employment with the GPD ended (or in Sanders' case, the date upon which he was reassigned) show that these claims are barred by the applicable statute of limitations. As noted previously, the statute of limitations in North Carolina for § 1983 claims and invasion-of-privacy claims is three years. See Alexander, 762 F. Supp. 2d at 804, 817.

Plaintiffs' original Complaint against Wray and Brady was filed on January 9, 2009. (See Doc. 3 at 11.) Brady alleges in his Answer that he retired from the GPD effective December 1, 2005 (Doc. 53 at 23), more than three years before the Complaint was filed. Brady attached to his Answer a "Report of Estimated Retirement Benefits" that shows his "Retirement Date" as "12/01/2005" (Doc. 53, Ex. A), and he verified the relevant portions of his Answer in a declaration attached to his reply brief (Doc. 71, Ex. 2). Similarly, Wray alleges in his Answer that he was relieved of all authority over personnel issues on

December 20, 2005, and he was locked out of his office on January 6, 2006, so that he performed no acts as Chief of Police after that date. (Doc. 52 at 20.) Wray alleges that he finally resigned as Chief on January 9, 2006, exactly three years before Plaintiffs filed their Complaint. (Id.) Wray verified the relevant portion of his Answer in a declaration attached to his reply brief. (Doc. 72, Ex. 1.) Because Plaintiffs' claims against Brady and Wray are based upon actions they took "while said Defendants were employed by the Defendant Greensboro" (Doc. 50 ¶ 113), Brady and Wray contend that Plaintiffs' § 1983 and invasion-of-privacy claims are time barred.

Sanders was added as a Defendant in Plaintiffs' Amended Complaint dated March 13, 2009.[17] (See Doc. 5-2 at 10.) He argues that this amendment does not relate back to the date of the original Complaint, and Plaintiffs have never contested this. Sanders alleges in his Answer that he was temporarily and then permanently reassigned out of the SID on January 12, 2006, and January 30, 2006, respectively, more than three years before the Amended Complaint was filed. (Doc. 53 at 24.) Sanders attached to his Answer GPD memoranda supporting these dates

---

[17] There are indications in the record that the Amended Complaint, filed originally in state court, was not filed until March 17, 2009. (See, e.g., Doc. 1 at 2; Doc. 53 at 24.)

(Doc. 53, Exs. B, C),[18] and he verified the relevant portions of his Answer in a declaration attached to his reply brief (Doc. 71, Ex. 1). Based on the SAC's allegation that "Defendant Sanders, at all time relevant hereto, was assigned to SID" (Doc. 50 ¶ 68), Sanders argues that the dates he presents show that Plaintiffs' § 1983 and invasion-of-privacy claims against him are time barred.

Because the GPD Defendants submitted evidence supporting their limitations defenses, and because the question of when they left the GPD or were reassigned is a narrow, straightforward factual issue potentially dispositive of several claims, the court issued an Order on June 9, 2011, notifying the parties of its intention to treat the GPD Defendants' motions as motions for partial summary judgment as to this single issue. (Doc. 73.) <u>See generally</u> Fed. R. Civ. P. 12(d) ("If, on a motion under Rule . . . 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."); <u>Jadoff</u>, 140 F.R.D. at 332 (treating a Rule 12(c) motion as a motion for

---

[18] Exhibit B is a memorandum from Interim Chief of Police T. R. Bellamy to Sanders dated January 12, 2006, which states that Sanders is temporarily reassigned out of the SID "[e]ffective immediately upon receipt of this memorandum." (Doc. 53, Ex. B.) Exhibit C is a personnel order dated January 30, 2006, which states that "[o]n February 16th the following transfers will be effective" and lists, among other transfers, Sanders' transfer from the SID. (Doc. 53, Ex. C.) Although this personnel order indicates that Sanders' transfer became permanent on February 16, 2006, rather than January 30, 2006, this does not affect the result in this case.

partial summary judgment, where the defendants had attached exhibits to their answer in support of their affirmative defense). The June 9, 2011 Order gave the parties twenty days "to present any materials relevant to a determination on the GPD Defendants' statute-of-limitations defense as to the claims against them under 42 U.S.C. § 1983 and for invasion of privacy, or to show cause why additional time is necessary for discovery as to this limited issue." (Doc. 73 at 6.) See generally Fed. R. Civ. P. 12(d) (stating that where a court contemplates converting a Rule 12(c) motion to a summary judgment motion, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion"); Gay v. Wall, 761 F.2d 175, 177 (4th Cir. 1985) ("[T]he term 'reasonable opportunity' requires that all parties be given 'some indication by the court . . . that it is treating the . . . motion as a motion for summary judgment, with the consequent right in the opposing party to file counter affidavits or pursue reasonable discovery.'" (quoting Johnson v. RAC Corp., 491 F.2d 510, 513 (4th Cir. 1974)) (internal quotation marks omitted)).

Within the time provided, Plaintiffs filed a response to the June 9, 2011 Order stating that "[w]ithout the benefit of discovery, Plaintiffs are in no position to refute the claims of the GPD Defendants relating to the alleged dates of events that they say deprived them of the ability to continue to harm the

Plaintiffs." (Doc. 74 at 1.) Plaintiffs request "leave to take discovery relating to the GPD Defendants' statute-of-limitations defense as to the causes of action in question, including whether Defendants may have fraudulently concealed their misconduct relating to the lineup books and other racially motivated actions." (Id. at 1-2.)

As to their Equal Protection claims under § 1983, Plaintiffs have provided no materials or affidavits that challenge the GPD Defendants' limitations defense or give any indication of what discovery might reveal as to this issue, beyond mere speculation that the GPD Defendants may have engaged in fraudulent concealment of their activities, which could justify tolling. Plaintiffs' SAC alleges, however, that throughout a several-month period in 2005 there were "rumors" within the GPD about allegedly discriminatory line-up books containing photos of black officers, including Plaintiffs. (See Doc. 50 ¶ 55; Doc. 51 at 30-31.) The rumors were prevalent enough that Sanders was asked about the line-up books during a Command Staff briefing in June 2005 (Doc. 51 at 30) and Wray later claimed to have been "gravely concerned by this rumor" (Doc. 50 ¶ 55). The court inferred from these allegations that Plaintiffs were aware of the alleged line-up books in 2005, and it was on this basis that Plaintiffs' hostile work environment claims under § 1981 were permitted to proceed. See Alexander,

762 F. Supp. 2d at 794-95. Moreover, several black GPD officers complained to the Interim City Manager in August 2005 about alleged racial discrimination within the GPD, triggering an extensive investigation by the City throughout fall 2005, joined eventually by outside consultants who released a final report in December 2005. (<u>See</u> Doc. 50 ¶¶ 96-99; Doc. 51 at 2-3, 10-11.) These allegations are all inconsistent with Plaintiffs' new speculation in connection with their Equal Protection claims that the GPD Defendants may have concealed the line-up books. To the extent Plaintiffs insinuate that an individual Plaintiff may have remained in the dark or that another alleged wrong would support an Equal Protection claim but was fraudulently concealed by the GPD Defendants, Plaintiffs have not identified such an individual Plaintiff or alleged wrong.[19]

Therefore, Plaintiffs have not demonstrated a need for additional discovery as to the GPD Defendants' limitations defense to their Equal Protection claims. <u>Cf.</u> Fed. R. Civ. P.

_____

[19] Plaintiffs have never clearly articulated the basis for their Equal Protection claims under § 1983 or explained which allegations they rely on for these claims. <u>See</u> <u>Alexander</u>, 762 F. Supp. 2d at 805 ("Evaluating Plaintiffs' section 1983 claim is rendered difficult by Plaintiffs' failure to explain or clarify this claim. Plaintiffs have not indicated how the GPD Defendants allegedly violated each of the constitutional rights mentioned . . . nor have they explained which factual allegations constitute violations of which rights."). The court permitted the Equal Protection claims to proceed at the Rule 12(b)(6) stage based on the line-up book allegations and consequently declined to sift through Plaintiffs' other allegations and determine whether other theories supporting these claims could be constructed. <u>See</u> <u>id.</u> at 807-08. Since then, Plaintiffs have provided no additional clarity.

56(d)(2) ("If a nonmovant [at the summary judgment stage] shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . allow time to obtain affidavits or declarations or to take discovery . . . ."); Nguyen v. CNA Corp., 44 F.3d 234, 242 (4th Cir. 1995) ("[Plaintiff's] brief on appeal offers numerous vague assertions as to matters upon which the district court should have allowed discovery to continue before deciding the motion for summary judgment on the merits. At no point, however, does [plaintiff] focus our attention on an affidavit presented to the district court that particularly specifies legitimate needs for further discovery." (affirming the denial of plaintiff's motion for continuance under the predecessor to Rule 56(d))); Amirmokri v. Abraham, 437 F. Supp. 2d 414, 420-21 (D. Md. 2006) (denying an employment discrimination plaintiff's motion for additional discovery where the plaintiff's Rule 56 affidavit did not specify why the discovery provided at the administrative level was insufficient to allow the plaintiff to respond to the issue at hand and where the plaintiff's requests for discovery concerned information "largely irrelevant and unnecessary to the issues in this case"), aff'd, 266 F. App'x 274 (4th Cir. 2008) (unpublished per curiam opinion).

Proceeding to the merits of the GPD Defendants' motions, which the court treats as summary judgment motions as to

35

Plaintiffs' Equal Protection claims, the court finds that the GPD Defendants have shown, based upon the verified passages in their Answers and the verified exhibits to their Answers, that there is no genuine dispute as to the dates on which Wray was stripped of authority as Chief, Wray and Brady resigned, and Sanders was reassigned. Importantly, Plaintiffs have not contested these dates. Because the SAC states that all alleged actions by Wray, Brady, and Sanders took place while they were employed by the GPD and while Sanders was assigned to the SID (see Doc. 50 ¶¶ 68, 113), the dates in question, more than three years before the filing of the Complaint (or Amended Complaint in Sanders' case), establish that Plaintiffs' Equal Protection claims under § 1983 are time barred. See generally Fed. R. Civ. P. 56(a) (containing the standard applicable to summary judgment motions). Therefore, these claims will be dismissed.

In contrast, Hinson has provided sufficient grounds for additional discovery as to his Fourth Amendment and invasion-of-privacy claims. Both of these claims rest on allegations that Sanders (at the direction of Wray and Brady) secretly placed a keystroke-monitoring device on Hinson's computer without justification, monitored Hinson's keystrokes to determine his password, and used the password to enter Hinson's email account and download one year of Hinson's emails. (See Doc. 50 ¶ 101.) Hinson has now submitted an affidavit stating that he did not

learn of Sanders' actions until approximately 2009, when then-Chief Timothy R. Bellamy told him that an internal GPD investigation had revealed Sanders' earlier activities.[20] (Doc. 74, Ex. A.) The affidavit also states that Hinson then filed an EEOC Charge regarding these events, and on June 24, 2011, in light of the court's June 9, 2011 Order, he submitted a written FOIA request for a copy of this Charge. (Id.)

Hinson has created a question of fact regarding when he first became aware of Sanders' activities, which may affect the time of accrual of Hinson's causes of action.[21] Thus, summary

---

[20] This is consistent with (although not required by) the SAC's allegation that in 2009 Sanders admitted to using the keystroke-monitoring device and searching Hinson's emails. (See Doc. 50 ¶ 101.)

[21] Hinson assumes that the "discovery rule" applies to both of his claims. As to his Fourth Amendment claim pursuant to § 1983, "[u]nder federal law a cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." Brooks v. City of Winston-Salem, N.C., 85 F.3d 178, 181 (4th Cir. 1996) (addressing a § 1983 claim). As to Hinson's invasion-of-privacy claim, the court has not located a North Carolina case directly addressing when such a claim accrues. "Under the common law, a cause of action accrues at the time the injury occurs, even in ever so small a degree. . . . This is true even when the injured party is unaware that the injury exists." Pembee Mfg. Corp. v. Cape Fear Constr. Co., 313 N.C. 488, 492, 329 S.E.2d 350, 353 (1985) (citation omitted) (internal quotation marks omitted). This principle has been modified by N.C. Gen. Stat. § 1-52(16):

> Unless otherwise provided by statute, for personal injury or physical damage to claimant's property, the cause of action, except in [malpractice cases], shall not accrue until bodily harm to the claimant or physical damage to his property becomes apparent or ought reasonably to have become apparent to the claimant, whichever event first occurs.

The North Carolina Supreme Court has construed this provision broadly, holding that it applies even to a claim for criminal conversation, which the court considered a "personal injury" under the provision.

judgment is not appropriate, and the court will treat the GPD Defendants' motions as Rule 12(c) motions as to Hinson's Fourth Amendment and invasion-of-privacy claims. These motions will be denied without prejudice for further factual development.

**III. CONCLUSION**

For the reasons provided above, IT IS THEREFORE ORDERED that:

(1) The Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c) by Defendant The City of Greensboro (Doc. 62) is DENIED.

(2) The Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c) by Defendant David Wray (Doc. 64) is GRANTED IN PART AND DENIED IN PART:

(a) The motion, treated in part as a motion for summary judgment, is GRANTED as to Plaintiffs' Equal Protection claims under 42 U.S.C. § 1983, which are DISMISSED WITH PREJUDICE;

(b) The motion is DENIED as to Plaintiff Antuan Hinson's Fourth Amendment claim under 42 U.S.C. § 1983 and invasion-of-privacy claim.

(3) The Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c) by Defendants Randall

---

See <u>Misenheimer v. Burris</u>, 360 N.C. 620, 622-26, 637 S.E.2d 173, 175-77 (2006).

Brady and Scott Sanders (Doc. 66) is GRANTED IN PART AND DENIED IN PART:

(a) The motion is GRANTED as to Plaintiff Steven A. Evans' disparate treatment claim under 42 U.S.C. § 1981, which is DISMISSED WITH PREJUDICE as against Brady and Sanders;

(b) The motion, treated in part as a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, is GRANTED as to Plaintiffs' Equal Protection claims under 42 U.S.C. § 1983, which are DISMISSED WITH PREJUDICE;

(c) The motion is DENIED as to Plaintiff Antuan Hinson's Fourth Amendment claim under 42 U.S.C. § 1983 and invasion-of-privacy claim.

/s/   Thomas D. Schroeder<br>
United States District Judge

August 3, 2011